UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARC W.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. C19-168 BHS-BAT

**REPORT AND RECOMMENDATION**

Plaintiff appeals the denial of his Supplemental Security Income and Disability Insurance Benefits applications. He contends the ALJ erred by (**1**) failing to properly consider his testimony about his pain and limitations; (**2**) failing to properly consider the treating medical opinion of Laura Koehn, M.D.; and (**3**) finding at step five that he could perform other work. Dkt. 10, at 1. As discussed below, the Court recommends the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

## BACKGROUND

Plaintiff is currently 50 years old, has a GED and technical training, and has worked as a deck hand on a fishing vessel. Tr. 174, 178. In 2015, he applied for benefits, alleging disability as of August 30, 2005, though that date was later amended to **May 1, 2010**. Tr. 72, 174. After plaintiff's applications were denied initially and on reconsideration, the ALJ conducted a 2017

REPORT AND RECOMMENDATION - 1

hearing and issued a 2018 decision finding him not disabled. Tr. 72–83, 171–202. As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–4.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ determined that plaintiff met the insured status requirements through June 30, 2010, and found:

> **Step one:** Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 1, 2010.
>
> **Step two:** Plaintiff had the following severe impairments: **status post right elbow injury; transverse myelitis (thoracic spine); and bladder cancer**.[2]
>
> **Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]
>
> **Residual Functional Capacity ("RFC"):** Plaintiff had the residual functional capacity to perform **light work with certain limitations**: He can lift, carry, push, and pull up to 20 pounds occasionally and up to 10 pounds frequently; he can stand/walk about six hours and sit about six hours during a typical eight-hour workday; he can perform tasks that avoid concentrated exposure to hazards, such as machinery and unprotected heights.
>
> **Step four:** Plaintiff could not perform his past work as a deck hand on a fishing vessel.
>
> **Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, he is not disabled.

Tr. 74–83.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v.*

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] To the extent plaintiff claims that he suffers from "chronic pain syndrome," Dkt. 10, at 7, there is no evidence of this diagnosis and the ALJ did not find it to be a severe impairment.

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

*Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff has failed to demonstrate that the ALJ's interpretation of the testimonial or medical evidence was unreasonable, unsupported by substantial evidence, or based on harmful legal error.

**1. Plaintiff's Testimony About Pain and Limitations**

Plaintiff contends that the ALJ failed to state specific, clear and convincing reasons for discounting the plaintiff's testimony regarding the degree and nature of his pain and the limitations that result from his severe impairments. Although plaintiff offers an alternative explanation, he has not shown that the ALJ's interpretation of his testimony and the evidence was unreasonable.

Absent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving specific, clear and convincing reasons. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999). That a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it. *See Smolen*, 80 F.3d at 1285. "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (internal marks and citation omitted). In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility

REPORT AND RECOMMENDATION - 3

evaluation," such as inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Id.* (internal marks and citations omitted). Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p, eliminates previously applicable SSR references to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. See SSR 16-3p, *available at* 2016 WL 1119029, at *1–*2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Molina*, 674 F.3d at 1112–13 (internal marks and citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113.

    The ALJ discounted the severity of plaintiff's pain and limitation testimony because (1) the medical record and his own statements showed adequate pain management and less severe limitations related to his back impairment; (2) the medical record and his own statements showed fewer symptoms related to his bladder condition; (3) few complaints and no significant treatment suggested less severe limitations related to his right arm/elbow; and (4) his daily

activities suggested less severe limitations. These were specific, clear and convincing reasons to discount plaintiff's pain and symptom testimony.

The ALJ acknowledged that plaintiff testified that he is unable to perform fulltime work because his spinal impairment (transverse myelitis associated with an outbreak of shingles/herpes zoster) causes pain and weakness in his right leg and diminishes his ability to stand and walk, which result, on a bad day, in him falling to the floor when getting out of bed while, on a good day, in walking for about two hours and sitting three to four hours. Tr. 77. The ALJ further noted that plaintiff testified to use of a cane based on medical recommendation and to diminished concentration and increased nightmares while on narcotic pain medication. Tr. 78. Nonetheless, the ALJ discounted plaintiff's testimony about back pain and related limitations based on inconsistency with the medical record, which also documented plaintiff's inconsistent statements. Tr. 78. For example, although plaintiff sought treatment in May, October, and November 2010, he reported "[t]he usual pain level is 4 (scale of 1-10). Functional impairment is moderate – when present it interferes only with some daily activities." Tr. 411; *see* Tr. 78 (citing Tr. 411, 441–42, 449, 451). Similarly, plaintiff reported on several occasions that his medications effectively reduced his pain. Tr. 78. For example, in January 2012, plaintiff described his "pain overall is not bad and he can stand it," though "[f]rom time to time, especially at night, it becomes severe so he would like to have some Vicodin on an as needed basis," Tr. 433; in April 2014, his physician noted that "[p]ain is currently managed pretty well with gabapentin and vicodin," Tr. 427; in February 2015, plaintiff told his physician that "[h]e feels his pain adequately controlled" with 1-2 hydrocodone pills daily and medical marijuana, Tr. 463; and, when he discontinued the use of medical marijuana alone for pain relief, plaintiff returned to using 1-2 hydrocodone pills per day, Tr. 594. *See* Tr. 78–79. Inconsistent with

REPORT AND RECOMMENDATION - 5

plaintiff's hearing testimony that "I can't sleep at all" due to side effects and nightmares from pain medication, Tr. 190, in April 2014 plaintiff told his clinician that his sleep was "ok" and "[o]ccasionally he has a real bad night, Tr. 425. *See* Tr. 79. Moreover, even during a period in which he received no narcotic pain medication in August 2015, examining doctor Gary Gaffield, D.O., noted that plaintiff reported only having "back pain with prolonged activities" and sometimes when he "bends and flexes [his back] to extremes." Tr. 512; *see* Tr. 79. In fact, plaintiff did not display back or elbow symptoms during Dr. Gaffield's evaluation, which led Dr. Gaffield to opine that plaintiff had no physical limitations whatsoever. Tr. 512–13; *see* Tr. 79. To the extent plaintiff's pain was the result of something other than transverse myelitis secondary to herpes zoster, imaging showed some improvement and decrease in the size of the legion in plaintiff's spine even though his clinical presentation was "the same." Tr. 78 (citing Tr. 438). It was reasonable for the ALJ to discount plaintiff's testimony about his back pain and limitations based on inconsistency with the medical record and his own statements.

Second, the ALJ acknowledged plaintiff's testimony that bladder pain and symptoms from bladder cancer and its treatment (including chemotherapy) led to, among other things, an unpredictable need to use the bathroom multiple times during the day. Tr. 78. Nonetheless, the ALJ discounted plaintiff's testimony about the severity of his bladder pain and limitations due to its inconsistency with the medical record, which included his own inconsistent statements. Tr. 80. For example, although the record documented plaintiff's bladder symptoms associated with bladder cancer were undoubtedly serious beginning in mid-2015, by 2016 plaintiff denied urinary frequency and urgency, fever, nausea, vomiting, hematuria, and/or dysuria at a number of office visits, Tr. 667–68, 678; and in March 2017, plaintiff reported having been in remission for a year, Tr. 610. *See* Tr. 80. It was reasonable for the ALJ to discount plaintiff's testimony about

his bladder pain and limitations from bladder cancer based on differing reports of his symptoms over time.

Third, plaintiff does not challenge, and therefore appears to waive consideration of, the ALJ's reason for discounting plaintiff's testimony about his right arm/elbow impairment. The ALJ determined that, absent a reference in April 2014 chart notes, plaintiff has had few complaints about, and no significant treatment of, his right arm/elbow. Tr. 78 (citing Tr. 496); *see* Dkt. 10; Dkt. 12; *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). To the extent plaintiff has folded this argument into one about generalized pain, it was reasonable for the ALJ to discount his testimony about his right arm/elbow pain based on the paucity of complaints about, and lack of treatment of, his right arm/elbow. *See Burch v. Barnhart*, 4003 F.3d 676, 68 (9th Cir. 2005). Even if that reason was not sufficiently clear and convincing alone, it would amount to harmless error given Dr. Gaffield's examining opinion that plaintiff suffered no physical limitations stemming from his complaint of right elbow weakness. Tr. 509, 512–13.

Fourth, the ALJ found that plaintiff's daily activities did not accord with the degree of physical limitations that he alleged. Tr. 80. For example, in 2013, plaintiff reported "walking approximately 1.5-3 miles and performing stretching exercises," and his physical therapist reported that "[f]unctionally the patient is independent with all activities." Tr. 746; *see* Tr. 80. In August 2015, plaintiff reported to an examining psychiatrist that he took care of his three children and a dog as well as household chores. Tr. 517; *see* Tr. 80. In November 2015, plaintiff injured his finger picking up debris in his yard. Tr. 584; *see* Tr. 80. To the extent the ALJ construed too much detail about daily activities by citing to the examining psychiatrist's notes, such a citation constitutes harmless error. During an evaluation of plaintiff's physical limitations, Dr. Gaffield's examining opinion provided greater specificity:

REPORT AND RECOMMENDATION - 7

> He does take care of children ages six, nine, and 11. He takes care of a dog, occasionally interacts with family and friends. He is able to bathe and dress himself, prepare food, read, watches TV, works on a computer, goes to church, doesn't have any hobbies, does household work and yard work. A typical day he's up at nine, gets his children ready for the day, watches TV, has a cigarette, and coffee, does some household chores, sits around til lunch. At lunch time he prepares lunch for himself and his children, sits around within the afternoon, works on his computer, watches some TV, does some more household chores, gets dinner ready. After dinner, he and his children and his ex wife watch TV. He goes to bed at about 11.

Tr. 510. Even if plaintiff's activities suggested some difficulty functioning, it was reasonable for the ALJ to cite his daily activities as grounds for discrediting his testimony to the extent they contradicted his claims of a totally debilitating impairment.[4] *See Molina*, 674 F.3d at 1112–13

Finally, the Court notes that the ALJ necessarily assessed the plaintiff's testimony in light of adverse medical opinions that plaintiff does not challenge. Chief among these is Dr. Gaffield's 2015 examining medical opinion that plaintiff had no physical limitations, an opinion that the ALJ discounted because it did not account sufficiently for plaintiff's impairments. Tr. 80, 509–13. The ALJ also gave some weight to the nonexamining medical opinion of Greg Saue, M.D., who opined that plaintiff could perform medium work. Tr. 80–81, 242–44. In the end, the ALJ

---

[4] For example, plaintiff alleges that Dr. Gaffield failed to provide adequate specificity about the dog care activities that plaintiff performs, or the size and weight of the dog, and then argues that there is no information "from which the ALJ could legally and properly infer that Plaintiff performs any physical activities which are inconsistent with his statements about the nature and degree of his chronic neuropathic pain and how it limits his physical functioning." Dkt. 10, at 17. The ALJ is not required to demand that medical sources provide such minute specificity; an ALJ is required only to make reasonable inferences drawn from the record. *Batson v. Comm'r of SSA*, 359 F.3d 1190, 1193 (9th Cir. 2004). Dr. Gaffield examined plaintiff, listed his reported daily activities, and determined him to be entirely without physical limitations, while the ALJ reasonably found that such daily activities were inconsistent with testimony that plaintiff fell out of bed on bad days and could walk no more than two hours and sit no more than three to four hours on good days. Tr. 77.

REPORT AND RECOMMENDATION - 8

assessed an RFC that was between Dr. Saue's conclusion that plaintiff could perform medium work and Dr. Koehn's conclusion that he could perform only sedentary work. Tr. 81. Regardless, it was reasonable for the ALJ to have discounted plaintiff's pain and symptom testimony based on Dr. Saue's and Dr. Gaffield's opinions such that any failure to cite those opinions at length in the course of discussing plaintiff's testimony constitutes harmless error.

Plaintiff argues that none of the ALJ's reasons for discounting his pain and symptom testimony were specific, clear and convincing. Plaintiff's arguments offer, however, only an alternative interpretation of the evidence. The ALJ here properly discounted plaintiff's testimony as inconsistent with the medical and other evidence. *See Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); SSR 16-3p, at *2.

Plaintiff has failed to demonstrate that the ALJ's decision to discount his pain and limitations was unsupported by substantial evidence or the result of harmful legal error.

**2. Dr. Koehn's Treating Medical Opinion**

Plaintiff argues that the ALJ discounted Dr. Koehn's treating opinion that plaintiff could perform only sedentary work without citing specific and legitimate reasons supported by substantial evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). The Court disagrees.

When giving "some" weight to Dr. Koehn's opinion, the ALJ noted that in an earlier chart note Dr. Koehn stated that "it is possible that [plaintiff] may be able to do light work." Tr. 81 (citing Tr. 611). In finding a middle ground between Dr. Koehn's opinion that plaintiff could perform sedentary work and Dr. Saue's opinion that plaintiff could perform medium work, the ALJ cited several specific and legitimate reasons supported by the record evidence: plaintiff consistently reported that medication adequately managed his back pain; treatment notes

REPORT AND RECOMMENDATION - 9

1 documented less extreme symptoms than alleged; and plaintiff remained functional and
2 independent throughout the relevant period, even caring for his three children and a dog on a
3 daily basis. Tr. 81. Plaintiff's argument to the contrary presents only a disagreement about the
4 ALJ's reasonable interpretation of the evidence.

5 Plaintiff has failed to demonstrate that the ALJ's discounting of Dr. Koehn's treating
6 opinion was unsupported by substantial evidence or the result of harmful legal error.

7 **3. Step Five Evaluation**

8 Plaintiff contends that the ALJ harmfully erred at step five of the sequential evaluation by
9 posing a hypothetical to the vocational expert that did not account for his symptom testimony
10 and Dr. Koehn's opinion limiting him to sedentary work. Because this is merely a restatement of
11 earlier unsuccessful arguments, this contention fails. An ALJ is not required to include opinion
12 or other evidence that has been properly discounted in the RFC assessment. *Batson v. Comm'r of*
13 *SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004).

## CONCLUSION

15 For the foregoing reasons, the Court recommends that the Commissioner's decision
16 should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

17 A proposed order accompanies this Report and Recommendation. Any objection to this
18 Report and Recommendation must be filed and served no later than **September 3, 2019**. If no
19 objections are filed, the Clerk shall note the matter for September 6, 2019, as ready for the
20 Court's consideration. If objections are filed, any response is due within 14 days after being
21 served with the objections. A party filing an objection must note the matter for the Court's
22 consideration 14 days from the date the objection is filed and served. Objections and responses
23 shall not exceed ten pages. The failure to timely object may affect the right to appeal.

1     DATED this 19th day of August, 2019.

                                                                                     _____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 11